**REICH RADCLIFFE & HOOVER LLP**
Marc G. Reich (SBN 159936)
mgr@reichradcliffe.com
Adam T. Hoover (SBN 243226)
adhoover@reichradcliffe.com
4675 MacArthur Court, Suite 550
Newport Beach, CA 92660
Phone:  (949) 975-0512
Fax: (949) 208-2839

**LIFSHITZ & MILLER LLP**
Joshua M. Lifshitz (*Pro Hac Vice to be submitted*)
jml@jlclasslaw.com
821 Franklin Ave., Suite 209
Garden City, NY 11530
Phone: (516) 493-9780
Fax: (516) 280-7376

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID RAUL as custodian for PINCHUS E. RAUL UTMA, NY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VERIFONE SYSTEMS, INC.,<br>ROBERT W. ALSPAUGH,<br>KAREN AUSTIN,<br>RONALD BLACK,<br>PAUL GALANT,<br>ALEX W. HART,<br>ROBERT B. HENSKE,<br>LARRY A. KLAINE,<br>JONATHAN I. SCHWARTZ,<br>JANE J. THOMPSON,<br>ROWAN M. TROLLOPE,<br><br>Defendants, | Case No: 3:18-cv-03215<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(A) AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**Demand for Jury Trial** |

Plaintiff David Raul as custodian for Pinchus E. Raul Utma, NY ("Plaintiff") by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Verifone Systems, Inc. ("Verifone" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on Verifone's website concerning the Company's public statements; and (d) review of other publicly available information concerning Verifone and the Defendants.

## SUMMARY OF THE ACTION

1.     This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Verifone against the Company and the members of the Company's board of directors (the "Board") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger between Verifone and an investor group led by the private investment firm Francisco Partners (the "Proposed Transaction").

2.     On April 9, 2018, Verifone entered into an Agreement and Plan of Merger (the "Merger Agreement") by and among the Company, Vertex Holdco LLC, a Delaware limited liability company ("Parent") and Vertex Merger Sub LLC, a Delaware limited liability company and a wholly-owned subsidiary of Parent ("Merger Sub").  Pursuant to the Merger Agreement, Merger Sub will be merged with and into the Company, with the Company continuing as the surviving company in the Merger. Parent and Merger Sub are owned by Francisco Partners and British Columbia Investment Management Corporation.

3.     Subject to the terms and conditions set forth in the Merger Agreement, at the effective time of the Proposed Transaction, each share of common stock of the Company issued and outstanding immediately prior to the effective time of the Proposed Transaction (other than shares of Company Common Stock owned by the Company, Merger Sub, Parent, or any of their respective direct or

indirect wholly-owned subsidiaries, in each case not held on behalf of third parties, and shares of Company Common Stock owned by stockholders of the Company who have properly demanded and not withdrawn a demand for, or lost their right to, appraisal rights under Delaware law) will be converted into the right to receive $23.04 per share of Company Common Stock in cash, without interest (the "Merger Consideration").

4. On May 7, 2018 the Company filed with the SEC an incomplete and misleading Proxy Statement (the "Proxy Statement") in connection with the Proposed Transaction. The Proxy Statement omits material information regarding the Proposed Transaction.

5. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of the federal securities laws.

6. Plaintiff seeks to enjoin Defendants from holding the stockholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Verifone stockholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (i) the conduct at issue had an effect

in this District; (ii) Verifone's principal executive offices are located in this District at 88 West Plumeria Drive, San Jose, California 95134; (iii) each of the Individual Defendants, and Company officers and/or directors, either resides in this District or has extensive contacts within this District; (iv) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; (v) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (vi) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

10.    Plaintiff is, and at all relevant times has been, a Verifone stockholder.

11.    Defendant Verifone is a Delaware corporation with its principal executive offices located at 88 West Plumeria Drive, San Jose, California 95134.  The Company's stock is traded on the New York Stock Exchange under the symbol "PAY."

12.    Defendant Robert W. Alspaugh ("Alspaugh") has been a member of the Company's Board since September 2008.

13.    Defendant Karen Austin ("Austin") has been a member of the Company's Board since June 2014.

14.    Defendant Ronald Black ("Black") has been a member of the Company's Board since December 2017.

15.    Defendant Paul Galant ("Galant") has been the Company's Chief Executive Officer ("CEO") and member of the Board since October 2013.

16.    Defendant Alex W. Hart ("Hart") has been a member of the Company's Board since July 2006 and Chairman since June 2014.

17.    Defendant Robert B. Henske ("Henske") has been a member of the Company's Board since January 2005.

18.    Defendant Larry A. Klane ("Klane") has been a member of the Company's Board since December 2017.

19.    Defendant Jonathan I. Schwartz ("Schwartz") has been a member of the Company's Board since June 2014.

20.    Defendant Jane J. Thompson ("Thompson") has been a member of the Company's Board since March 2014.

21.    Defendant Rowan M. Trollope ("Trollope") has been a member of the Company's Board since May 2017.

22.    Defendants Alspaugh, Austin, Black, Galant, Hart, Henske, Klane, Schwartz, Thompson, and Trollope are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of Verifone (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

24.    This action is properly maintainable as a class action because:

a.    The Class is so numerous that joinder of all members is impracticable. As of April 4, 2018, there were approximately 110,711,498 shares of Verifone common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public stockholders of Verifone will be ascertained through discovery;

b.    There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

   i.    whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy Statement in violation of Section 14(a) of the Exchange Act;

   ii.    whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

   iii.    whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy Statement.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

25.    Verifone represents itself as a global leader in payments and commerce solutions at the point of sale.  Key industries in which the Company operates include financial services, retail, petroleum, restaurant, hospitality, transportation, and healthcare.  Verifone sells into more than 150 countries worldwide, with a direct presence in approximately 40 countries.

### The Company Announces the Proposed Transaction

26.    On April 9, 2018, Verifone issued a press release announcing that that the Company had entered into the Merger Agreement.  Pursuant to the terms of the Merger Agreement, Merger Sub will be merged with and into the Company, with the Company continuing as the surviving company in the Merger.  The public shareholders of Verifone will receive $23.04 per share in cash upon consummation of the Proposed Transaction.

27.   The press release stated in pertinent part:

**SAN JOSE, Calif. and SAN FRANCISCO, Calif. – April 9, 2018 –** Verifone Systems, Inc. (NYSE: PAY) ("Verifone" or the "Company"), a world leader in payment and commerce solutions, and Francisco Partners, a leading technology-focused private equity firm, today announced that they have entered into a definitive agreement under which an investor group led by Francisco Partners and including British Columbia Investment Management Corporation ("BCI") will acquire Verifone for $23.04 per share in cash, representing a total consideration of approximately $3.4 billion, which includes Verifone's net debt.

Under the terms of the agreement, Verifone stockholders will receive $23.04 in cash for each share of Verifone common stock held, representing a premium of approximately 54% to the Company's closing share price of $15.00 on April 9, 2018. The Verifone Board of Directors has unanimously approved the definitive agreement and recommends that Verifone stockholders vote in favor of the transaction. Upon completion of the transaction, Verifone will become a privately held company.

Paul Galant, Chief Executive Officer of Verifone, said, "We are pleased to reach this agreement with Francisco Partners. This transaction delivers significant cash value to our stockholders and provides compelling benefits for our clients. We believe this transaction reflects the progress we have made executing our transformation from a terminal sales company to a payments and commerce solutions provider. With Francisco Partners' resources, expertise and track-record growing global technology businesses, we are confident that we will be better positioned to serve the needs of our clients around the globe."

"Verifone continues to build compelling and impressive products and technology and has attractive long-term growth prospects," said Peter Christodoulo, Partner at Francisco Partners. "We are excited to become investors and stewards of this important platform in the global payments and commerce ecosystem."

"Verifone's transformation from a hardware provider to a best-in-class payments and commerce solutions provider is just beginning," added Jason Brein, Partner at Francisco Partners. "We look forward to supporting the company as it continues its evolution."

"This investment builds on the strength of our financial technology, systems and software franchises," commented Dipanjan "DJ" Deb, co-founder & CEO of Francisco Partners. "Verifone will receive the highest focus of Francisco Partners as we support its continued growth and transformation in an increasingly software-centric world."

The transaction is not subject to a financing condition and is expected to close during the third calendar quarter of 2018, subject to customary closing conditions, including receipt of stockholder and regulatory approvals. The merger agreement includes a "go-shop" period, which permits Verifone's Board and advisors to actively initiate, solicit, encourage, and potentially enter into negotiations with parties that make alternative acquisition proposals through May 24, 2018. There can be no assurance that this

process will result in a superior proposal, and Verifone does not intend to disclose developments with respect to the solicitation process unless and until the Board makes a determination requiring further disclosure.

Qatalyst Partners is acting as financial advisor to Verifone and Sullivan & Cromwell LLP is serving as Verifone's legal advisor. Credit Suisse, Barclays and Royal Bank of Canada are acting as financial advisors and Kirkland & Ellis LLP is serving as legal advisor to the Francisco investor group. Credit Suisse, Barclays and Royal Bank of Canada have also provided committed debt financing for the transaction.

### The Proposed Transaction is Unfair to Shareholders

28.    The Proposed Transaction, as currently contemplated, is unfair to the Company's shareholders.

29.    While Defendants note that the price offered to shareholders represents a 54% premium over the Company's closing price as of April 9, 2018, the Company's stock has traded as high as $21.31 on September 12, 2017 and $18.47 on March 9, 2018.

30.    Further, the Company has showed prospects for future growth.  In particular, the Company has reported double-digit growth in sales since 2014, positive growth in EBITA since 2015, and positive net income in 2016.  All of these point to Verifone being very well situated for growth, a fact that is currently unaccounted for in the Merger Consideration.

### FALSE AND MISLEADING STATEMENTS

### AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

31.    On May 7, 2018, Defendants caused the Company to file the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement solicits the Company's shareholders to vote in favor of the Proposed Transaction.  Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material false and misleading statements or material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Financial Projections Prepared by Verifone's Management

32.     The Proxy Statement discloses certain financial projections developed by management and relied upon by the Board in recommending shareholders vote in favor of the Proposed Transaction.

33.     Specifically, the Proxy provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as: (i) Non-GAAP Net Revenue; (ii) EBITDA; (iii) Non-GAAP Net Income; (iv) Non-GAAP EPS; (v) Adjusted NOPAT; and (vi) Unlevered Free Cash Flow. Proxy Statement, at 41.

34.     At the very least, the Company must disclose the line item projections for the financial metrics that were used to calculate the above non-GAAP measures.  Such projections are necessary to make the non-GAAP projections included in the Proxy Statement not misleading and leaves Verifone shareholders without the necessary, material information to reach a full-informed decision concerning the Company, the fairness of the merger consideration, and, ultimately, whether to vote in favor of the Proposed Transaction.

35.     Failure to provide complete and full disclosure of the line item projections for the metrics used to calculate the above-mentioned non-GAAP metrics leave Verifone shareholders without the necessary, material information to reach a fully-informed decision concerning the Company, fairness of the merger consideration, and whether to vote in favor of the Proposed Transaction.

36.      The omission of the above-referenced projections and metrics renders the financial projections included in the Proxy Statement materially incomplete and misleading.  If a proxy or registration statement soliciting a shareholder vote discloses financial projections and valuation information, such projections must be complete and accurate.

**Qatalyst Partners, LP's Analyses**

37.     With respect to the Company's financial advisor, Qatalyst Partners, LP's ("Qatalyst") *Discounted Cash Flow Analysis*, the Proxy Statement omits: (i) the basis for selecting a terminal exit Adjusted NOPAT multiple range of 12.0x to 16.0x; (ii) the specific inputs and assumptions for the discount rate range of 9.0x to 11.0x applied to the Company's unlevered free cash flows and terminal values; and (iii) the perpetuity growth rates implied by this analysis.

38.     With respect to Qatalyst's *Selected Companies Analysis*, the Proxy Statement omits the Company's Street Case projections of Non-GAAP Earnings per Share for each of CY2018 and CY2019.

39.     With respect to Qatalyst's *Selected Transactions Analysis*, the Proxy Statement omits the Company's Street Case projections of next-twelve-months EBITDA.

40.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  As such, omitting this material information renders the statements in, *inter alia*, Certain Unaudited Company Forecasts and Opinion of Qatalyst Partners LP materially false and/or materially misleading in violation of the Exchange Act.

## Background of the Proposed Transaction

41.     The Proxy Statement omits material information relating to the sale process leading up to the Proposed Transaction.

42.     In particular, the Proxy Statement notes that the Company entered into non-disclosure agreements with certain interested parties to evaluate "a potential transaction between the parties." However, the Proxy Statement omits any further details regarding these non-disclosure agreements.

43.     The omission of such information is material to the Company's shareholders, as it is imperative to know whether such agreements contained "Don't Ask, Don't Waive" ("DADW") standstill provisions and whether such provisions are still in effect.

44.     This information is material to shareholders in deciding how to vote on the Proposed Transaction, as it would show whether or not a superior offer for the Company was available.

45.     Further, the Proxy Statement notes that "[t]he parties have agreed that the Company may grant employee retention awards to Company employees, including executive officers." It further states that, "[a]s of the date of this proxy statement, none of the Company's executive officers have entered into any agreement with Francisco Partners or its affiliates regarding employment with, or the provision of services to, Francisco Partners or any of its affiliates."

46.   However, the Proxy Statement omits the nature, timing, and substance of any discussions regarding post-merger employment, directorships, or payments during the negotiations leading to the Merger Agreement.

47.   Communications regarding post-transaction employment and merger-related benefits during the negotiation processes of the underlying transaction must be disclosed to stockholders, as this information is material for shareholders to understand potential conflicts of interest of management and the members of the Board and whether they have motivations that would prevent them (as fiduciaries) from acting solely in the best interests of the Company's shareholders.

48.   Lastly, the Proxy Statement notes that "[s]ince the commencement of the go-shop period, representatives of Qatalyst Partners, on behalf of the Company, have been in contact with potential counterparties to initiate discussions regarding their potential interest in making an acquisition proposal."  However, the Proxy Statement does not disclose any further information regarding these contacts, which is material information concerning other potential alternatives to the Proposed Transaction.

49.   The omission of the above materials renders the Proxy Statement materially incomplete and misleading, as shareholders will be unable to make a fully informed decision regarding whether to tender their shares in favor of the Proposed Transaction without proper disclosures.  As such, shareholders are threatened irreparable harm, warranting the injunctive relief sought herein.

**COUNT I**

**(Against All Defendants for Violations of Section 14(a)**

**of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

50.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.   Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of

1    any security (other than an exempted security) registered pursuant to section 78l of this title." 15

2    U.S.C. § 78n(a)(1).

3        52.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act,

4    provides that communications with stockholders in a proxy statement shall not contain "any statement

5    which, at the time and in the light of the circumstances under which it is made, is false or misleading

6    with respect to any material fact, or which omits to state any material fact necessary in order to make

7    the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

8        53.    The Defendants have issued the Proxy Statement with the intention of soliciting

9    stockholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized

10   the dissemination of the Proxy Statement, which fails to provide critical information regarding, among

11   other things, the financial projections for the Company and the fairness opinion of Verifone's financial

12   advisor, Qatalyst.

13       54.    In so doing, Defendants made untrue statements of fact and/or omitted material facts

14   necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles

15   as officers and/or directors, were aware of the omitted information but failed to disclose such

16   information, in violation of Section 14(a).  Defendants were therefore negligent, as they had

17   reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy

18   Statement, but nonetheless failed to obtain and disclose such information to stockholders although

19   they could have done so without extraordinary effort.

20       55.    The Defendants knew or were negligent in not knowing that the Proxy Statement is

21   materially misleading and omits material facts that are necessary to render it not misleading. The

22   Defendants undoubtedly reviewed and relied upon the omitted information identified above in

23   connection with their decision to approve and recommend the Proposed Transaction.

24       56.    The Defendants knew or were negligent in not knowing that the material information

25   identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy

26   Statement identified above to be materially incomplete and misleading.  Indeed, the Defendants were

27   required to be particularly attentive to the procedures followed in preparing the Proxy Statement and

28

review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

57.   The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

58.   The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

59.   Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for

### Violations of Section 20(a) of the Exchange Act)

60.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

61.   The Individual Defendants acted as controlling persons of Verifone within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Verifone, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

62.   Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

63.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

64.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

65.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

66.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

67.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

    A.  Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and her counsel as Class Counsel;

    B.  Enjoining Defendants and all persons acting in concert with them from proceeding with the stockholders vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy Statement;

    C.  Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

    D.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

    E.  Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated:    May 29, 2018        **REICH RADCLIFFE & HOOVER LLP**
By: /s/ Adam T. Hoover
Adam T. Hoover

**LIFSHITZ & MILLER LLP**
Joshua M. Lifshitz
Attorneys for Plaintiff

## SWORN CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

I, David Raul, hereby certify that:

1.  Plaintiff has reviewed the complaint and authorized the commencement of a lead plaintiff motion and/or filing of a complaint on plaintiff's behalf.

2.  I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in Pay securities that are the subject of this litigation during the Class Period are attached hereto as Exhibit A.

5.  I have not served as or sought to serve as a representative party on behalf of a Class under this title during the last three years.

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the Court, including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Executed on 05/29/2018



Signature

## Exhibit A

My transactions in Verifone Systems, Inc. (PAY) securities that are the subject of this litigation during the class period set forth in the complaint are as follows ("P" indicates a purchase, "S" indicates a sale):

| Security | Date | Sale | Purchase | Number of Shares | Price per Share |
|----------|------|------|----------|------------------|-----------------|
| PAY | 11/13/2012 | | P | 11 | $30.89 |